496 A.2d 672

**ATTORNEY GRIEVANCE COMMISSION**

v.

**Versteal Daniels KEMP and Alonzo Daniel Black, Jr.**

**Misc. Docket (Subtitle BV) No. 12, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 6, 1985.

Motion for Reconsideration Filed by Black Denied Oct 18, 1985.

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel to Atty. Grievance Com'n of Maryland, Annapolis, for petitioner.

Robert E. Cahill, Sr., Baltimore, for Versteal Daniels Kemp.

Joseph L. Gibson, Jr., Washington, D.C., for Alonzo Daniel Black, Jr.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, ORTH, CHARLES E. Jr. (retired,

specially assigned) and MORTON, JAMES C., Jr. (retired, specially assigned), JJ.

COLE, Judge.

The Attorney Grievance Commission, through Bar Counsel, filed a petition with this Court for disciplinary action against Versteal Daniels Kemp and Alonzo Daniel Black, Jr. (respondents). Kemp has been a member of the Maryland Bar since 1974, while Black has been such a member since 1980. The cases, which were consolidated, arose out of respondents' representation of a client who was involved in an automobile accident in 1981. We transmitted the matter under Maryland Rule BV9 to Judge Albert T. Blackwell, Jr., of the Circuit Court for Prince George's County. After conducting an evidentiary hearing on the charges, Judge Blackwell concluded that respondents violated Disciplinary Rules (DR) 1–102(A)(1), 9–102(A), and 9–102(B)(3).[1] Although Judge Blackwell filed a separate opinion in each

---

1. Disciplinary Rule (DR) 1–102(A)(1) provides:
   DR 1–102  Misconduct.
   (A) A lawyer shall not:
       (1) Violate a Disciplinary Rule.
   DR 9–102(A) states:
   DR 9–102  Preserving Identity of Funds and Property of a Client
   (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
       (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
       (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
   DR 9–102(B)(3) provides:
   (B) A lawyer shall:
       *      *      *      *      *      *

case, we set forth below only those pertinent portions of his findings of fact and conclusions of law: [2]

Petitioner charges that Respondents Black & Kemp engaged in misconduct in their representation of Alma Howard. Howard had sustained serious injuries in an automobile accident on October 2, 1981 and was rendered temporarily unconscious. Shortly after the accident, Blakeney, Howard's sister, contacted Black regarding his possible representation of Howard. Black, who had little experience in civil litigation, brought Kemp in to assist him with the case.

On October 10, 1981, Blakeney signed a retainer providing for a one-third contingency fee for respondents. Howard signed the same retainer when she regained consciousness. Thereafter, Kemp wrote a letter of representation to Travelers Insurance Company (Travelers), the insurer of the automobile in which Howard was riding when the accident occurred. The insurance adjuster, Mr. Martinez, sent respondents personal injury protection (PIP) forms which Kemp completed and returned to Travelers on November 6, 1981. These forms indicated Howard's medical bills amounted to $36,000 at that time. On December 29, 1981, Travelers sent Kemp a check in the amount of $7,500 made payable to "Alma Howard and Versteal Kemp, her attorney." The check consisted of $2,500 basic no fault medical (or PIP) and $5,000 medical payment (Med. Pay).

Later, during a meeting, respondents explained to Howard and Blakeney that they were withholding $2,500 of the check for fees and future expenses. The check was endorsed and on January 4, 1982, Kemp deposited it in his

---

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

**2.** For purposes of clarity and consistency, we have made minor editorial revisions to the judge's findings of fact and conclusions of law.

"escrow" account at Maryland National Bank. On January 22, 1982, a $5,000 check was disbursed to Howard and the remaining $2,500 was divided equally between respondents—$1,250 to Black and $1,250 to Kemp. Therefore, respondents did retain one-third of (or $2,500) the $7,500 check from Travelers.

Black did not maintain a separate escrow account. He deposited his $1,250 share of the check from Travelers into his regular account which was also used for personal and business purposes. Therefore, according to Black's testimony, the $1,250 from Travelers was combined with some of his personal and business funds.

In December 1981, a month prior to these transactions, Kemp had opened another escrow account at Union Trust. He was in the process of transferring the escrow account at Maryland National Bank to his new Union Trust escrow account, and at the same time transforming his account at Maryland National Bank from an escrow account to a personal or business account. Kemp did not deposit the $7,500 check from Travelers into his new Union Trust escrow account because he had not yet obtained printed checks from Union Trust and thought it might disturb Howard to receive the $5,000 by non-printed check. Thus, for a short time Kemp's Maryland National Bank account contained the $7,500 check from Travelers, as well as other monies, some of which became fee to Kemp late in December 1981. After the $5,000 was disbursed to Howard and the $1,250 was disbursed to Black, Kemp's Maryland National Bank account contained the $1,250 he withheld for fees and future expenses, as well as other monies for business and personal use. Regarding the $1,250, Kemp testified that he "wrote checks and used it for personal business." Kemp testified in the following manner with respect to the escrow account at Maryland National Bank:

> After I disbursed the checks in this case I started using that account as my regular operating account and maintained a trust account at Union Trust.

Therefore, the money from Travelers was combined with some of Kemp's personal or business funds for a period of time in the Maryland National Bank account.

Eventually, Howard and Blakeney became dissatisfied with the manner in which respondents were handling their case. Specifically, they objected to respondents retaining one-third of the check from Travelers, and they were dissatisfied with respondents' explanation of the check disbursement. Howard and Blakeney sought the help of another attorney, Howard Rensin, and on February 10, 1982, they retained him as their attorney. On February 12, 1982, Howard and Blakeney wrote a letter to respondents, discharging them.

On March 8, 1982, Kemp wrote a letter to Howard which indicated that respondents had the case in a "settlement posture" for at least $25,000. On April 22, 1982, respondents wrote a letter to Rensin which also indicated that respondents had the case in a "settlement posture" for $25,000 for a few months. Kemp's May 6, 1982 letter to Martinez also said Howard's case had been "pending settlement" in the amount of $25,000 for sometime. Respondents had never formally secured a settlement offer from the Travelers claims adjuster for $25,000.

Bar Counsel originally charged, but did not press, respondents with the following:

DR 1–102(A)(3) — illegal conduct involving moral turpitude;

DR 1–102(A)(5) — conduct that is prejudicial to the administration of justice;

DR 9–102(B)(4) — prompt payment to client of funds or properties in the possession of a lawyer which the client is entitled to receive; and

Md.Code (1957, 1984 Supp.), Art. 10, § 44—Attorney's duties when dealing with escrow funds.

Bar Counsel charged and pressed respondents with violations of the following:

DR 2–106(A) — charging or collecting excessive fee;

DR 9–102(A) — commingling;

DR 9–102(B)(3) — failure to maintain complete records of client's property; and

DR 1–102(A)(1), (4), & (6) — violation of a DR, misrepresentation, and engaging in conduct adversely reflecting on fitness to practice law.

DR 2–106(A) states that:

> A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

The fact that respondents retained one-third (or $2,500) of the $7,500 check from Travelers led Bar Counsel to charge respondents with taking an excessive fee, since $2,500 of the $7,500 is PIP coverage and ordinarily attorneys do not collect a fee from PIP payments.[3]

Respondents claim they did not charge a fee against the PIP payment: rather they took one-third of the remaining $5,000 medical payment (or $1,666.66), and added future costs and expenses. Thus, they retained the total of $2,500 or $1,250 each, which was not charged against the PIP coverage and which they claim does not amount to an excessive or improper fee. Although respondents never made a formal accounting as to how they retained the money, the court accepts respondents' version (that they retained roughly one-third of the $5,000 medical payment plus costs and future expenses) as factually correct. This would not amount to clearly an excessive fee if the case had been handled to a conclusion, therefore the court does not find that respondents violated DR 2–106(A).

---

**3.** *See* Formal Opinions of the Maryland State Bar Association Committee on Ethics 76–1 and 77–4, which discuss the impropriety of charging a contingent fee for the recovery of PIP payments and the ethical aspects in the collection of PIP payments. Charging a contingent fee on the collection of PIP coverage is seen as improper since mandatory PIP coverage is now required in Maryland and payment follows automatically from the filing of a simple "accord" form.

DR 9–102(A) states that:

All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

1. Funds reasonably sufficient to pay bank charges may be deposited therein.

2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

When Black deposited the $1,250 from Travelers into his account, he commingled it with his own personal and business funds contained in that account. When Kemp deposited the $7,500 check from Travelers in his Maryland National Bank account, he commingled it with some of his own funds which were in the account. After Kemp disbursed some of those funds to Howard and Black, the $1,250 he retained in his Maryland National Bank account was commingled with some of his own funds, since some of the money at that point was fee which was already earned, some was for future expenses, and some money in the account was respondent's own money used for personal and business purposes. The court finds there was a violation of DR 9–102(A).

DR 9–102(B)(3) indicates that a lawyer shall:

Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his clients regarding them.

The evidence indicates that respondents did not make a formal written accounting to Howard and Blakeney re-

garding the $2,500 retained from the check from Travelers. Although respondents thought they had given an adequate oral accounting to the client when the check was signed at the conference, the respondents' explanation of the disbursements was not satisfactorily clear to the client. The evidence also indicated that respondents did not maintain complete records of the client's funds which were retained from the Travelers money. Based on these facts, the court finds respondents failed to comply with DR 9–102(B)(3).

DR 9–102(A) states that:

A lawyer shall not:

1. Violate a Disciplinary Rule.

     *     *     *     *     *     *

4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

     *     *     *     *     *     *

6. Engage in any other conduct that adversely reflects on his fitness to practice law.

This charge centers on the fact that in three different letters, respondents stated that they had the case in a settlement posture of $25,000 when in fact no firm offer of $25,000 was ever obtained from Martinez, Travelers' claims adjuster. The testimony indicates not an intentional misrepresentation by respondents, but a misunderstanding between respondents and the claims adjuster regarding the posture of the case, as a reasonable belief that Travelers would ultimately pay a total of $25,000 could have been assumed from the circumstances. It was Kemp's understanding that if he could not offer documented evidence that the driver of the second car had no insurance, then Travelers would pay the uninsured motorist limit of $20,000 (which, when combined with the $5,000 medical payment, totals $25,000). Therefore, there was no intentional misrepresentation by respondents, merely a misunderstanding by respondents of the claims adjuster's statements regarding Howard's case evaluation and the

coverage available. Accordingly, this court finds no violation of DR 1–102(A)(4) & (6). However, because violations of other DRs were found, this court concludes there was a violation of DR 1–102(A)(1) (violation of a disciplinary rule).

The court concludes that the above-described conduct of Kemp and Black was in violation of Disciplinary Rules 9–102(A) and 1–102(A)(1), and was not in compliance with 9–102(B)(3).

## II

Both petitioner and respondents raise several exceptions to Judge Blackwell's findings of fact and conclusions of law. In reviewing these exceptions, we are mindful that "the lower court's findings are prima facie correct and will not be disturbed on appeal unless clearly erroneous." *Attorney Griev. Comm'n v. Myers*, 302 Md. 571, 578, 490 A.2d 231, 234 (1985) (citing *Attorney Griev. Comm'n v. Miller*, 301 Md. 592, 602, 483 A.2d 1281, 1287 (1984)).

## EXCEPTION I

■ Although Judge Blackwell found that respondents repeatedly represented that they had the case in a "settlement posture" for $25,000, he nonetheless concluded that these representations were based on a misunderstanding concerning the insurance adjuster's statements regarding the evaluation of the case and the coverage available. In view of this conclusion, petitioner argues that the judge erred in failing to find that respondents violated DR 1–102(A)(4), which provides:

(A) A lawyer shall not:

      *     *     *     *     *     *

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

According to petitioner, respondents misrepresented to their client that they had the case in a settlement posture for $25,000 for the purpose of claiming a lien against that

amount. Moreover, petitioner contends that respondents could not claim that they had the case in a settlement posture for any amount because respondents never provided the insurer with evidence that the other driver was uninsured.

We are unable to conclude that the judge was clearly erroneous in not finding a violation of DR 1–102(A)(4). Judge Blackwell heard the testimony and observed the demeanor of several witnesses, including respondents and the insurance adjuster, regarding the "settlement posture" issue. As this Court recently remarked in *Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807, 816 (1984), "[i]t is elementary that a trier of fact may elect to pick and choose which evidence to rely upon." As a result, Judge Blackwell was free to choose to rely upon the version of these representations as related by respondents and the adjuster.

## EXCEPTION 2

Petitioner contends that Judge Blackwell erred in failing to find a violation of DR 2–106(A), which provides that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." This contention is based on respondents' receipt of one-third of the $5,000 paid under the insured's medical payments (Med. Pay) coverage. Petitioner essentially argues that because the services required in filling out a routine, undisputed Med. Pay claim are perfunctory in nature, contingent fees represent an improper measure of professional compensation. We agree.

Over twelve years ago the General Assembly mandated that all automobile liability policies written in Maryland after January 1, 1973 contain personal injury protection (PIP) coverage. *See* 1972 Md.Laws 73, § 1. The purpose behind this legislatively-mandated requirement "is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits." *Pennsylvania Nat'l*

*Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416
A.2d 734, 736 (1980). Thus, these policies must afford
medical, hospital, disability, and loss of income benefits up
to $2,500, *see* Md.Code (1957, 1979 Repl.Vol., 1984 Supp.),
Art. 48A, § 539(a), and these benefits are payable by the
insurer "without regard to the fault or nonfault of the
named insured or the recipient in causing or contributing to
the accident, and without regard to any collateral source of
medical, hospital, or wage continuation benefits." *Id.*
§ 540(a). With respect to payment of loss of income bene-
fits, the insurer may condition such payment upon the
injured person furnishing the insurer reasonable medical
proof of his injury causing loss of income. *Id.* § 539(a).
Otherwise, payment is generated automatically in the vast
majority of cases by simply filing a standard one page claim
form with the insurer.

In 1976, the Ethics Committee of the Maryland State Bar
Association (Committee) determined that it would be unethi-
cal, in virtually all cases, for a lawyer to charge a contin-
gent fee for collecting a claim against his client's own
insurer under the PIP coverage when the attorney has been
engaged on a contingent fee basis to handle a personal
injury claim against a third party. *See* Committee Formal
Op. 76–1 (impropriety of charging contingent fee for recov-
ery of PIP payments). The Committee reasoned that con-
tingent fees are permissible only when they are reasonable
under all the circumstances, including such relevant factors
as the risk and uncertainty. According to the Committee,
"[w]hen there is virtually no risk and no uncertainty, contin-
gent fees represent an improper measure of professional
compensation." Because PIP payments result from the
mandatory statutory obligation in the insurance contract
rather than from the professional skills of the attorney, the
Committee concluded that it would be "unreasonable and
unconscionable" to charge a contingent fee for such a
collection:

> For these reasons, many attorneys handling personal
> injury matters on a contingent fee basis submit the PIP

claim as a perfunctory accommodation to the client. However, since filling out forms of a legal nature, simple though they may be, is certainly part of a lawyer's work, the Committee feels that a reasonable charge based on the time actually spent in the preparation of the claim may ethically be charged. Also, if a genuine dispute arises with the insurance carrier requiring the attorney to perform substantial legal services to establish coverage and to generate a recovery, of course, he may make an appropriate charge based on time spent and other relevant factors, and, in some cases, based on a contingent fee arrangement. However, since it would be improper to charge on a contingent basis except in most unusual cases, attorneys in this situation would be well advised to document the extent of the "risk and uncertainty" and to secure the client's advance consent to this method of compensation.

*Id.* at 2; *see also* Committee Formal Op. 77–4 (ethical aspects in collection of PIP payments—supplemental discussion).

Although Med. Pay coverage is not mandated by statute, we believe the Committee's reasoning with respect to PIP payments has equal application to Med. Pay. First, Med. Pay benefits are, in virtually all cases, automatically payable upon the filing of a completed benefit form and medical report. As with PIP, the documentation is straightforward and the payments are made without regard to fault. Second, it is manifest that Med. Pay is not dependent, for the most part, upon the skills of a lawyer. The risk of uncertainty of recovery is, therefore, low indeed. Under these circumstances, it would be the rare case where an attorney could properly resort to a contingency fee for the payment of Med. Pay. As we see it, the better course would be for lawyers to supply the insurer with the requisite Med. Pay documentation as an accommodation to the client or subject to a minimal charge.

In the case *sub judice,* Judge Blackwell found that respondents charged the one-third contingency against the

$5,000 Med. Pay.[4] In our view, because there was no dispute as to payment under Med. Pay and because the insurer made payment upon receipt of the completed benefit form and medical report, the fee charged by respondents was clearly excessive and thus in violation of DR 2–106(A). That the client used the funds received under Med. Pay for other than medical expenses is irrelevant. We therefore conclude that Judge Blackwell erred in finding that the fee charged by respondents was not clearly excessive.

## EXCEPTION 3

Kemp and Black except to Judge Blackwell's conclusion that they commingled their client's funds in contravention of DR 9–102(A). A brief review of the transactions in question will place this exception in perspective.

■ Judge Blackwell found that Kemp deposited the $7,500 check from Travelers into his personal account at Maryland National Bank on January 4, 1982. Less than three weeks later, on January 22, 1982, Kemp disbursed a $5,000 check from that account to Howard, and a $1,250 check to Black. Black, in turn, deposited the $1,250 check into his regular account, which was also used for personal and business purposes. Judge Blackwell further found that Kemp did not deposit the $7,500 check into his newly-opened "Union Trust escrow account because he had not yet obtained printed checks from Union Trust and thought it might disturb Howard to receive the $5,000 by non-printed check." Based on these facts, Judge Blackwell concluded that Kemp violated DR 9–102(A) because Kemp commingled his client's funds with his own funds. We agree. Five thousand dollars of the $7,500 belonged to Howard, and

---

4. Judge Blackwell did not find that the $2,500 PIP payment was subject to the one-third contingency fee arrangement. Thus, the trial court accepted respondents' version that the $2,500 they charged their client represented one-third of $5,000 ($1,666) plus sums advanced for costs and future expenses. According to respondents, they "rounded" this figure to $2,500.

Kemp was therefore obligated to place that amount into an identifiable bank account in Maryland. Although these funds were commingled for a relatively short period of time (approximately three weeks), it remains that Kemp was in violation of DR 9–102(A).

In reviewing Judge Blackwell's findings of fact the court seemingly suggests that Kemp violated DR 9–102(A) on the additional ground that he commingled the $1,250 he retained after the disbursements to Howard and Black with some of his own funds. We cannot agree with this suggestion. Under the present rule, the funds a client advances for costs and expenses do not have to be deposited in an identifiable bank account.[5] Thus, the rule sanctions commingling in this narrowly circumscribed instance. The $1,250 retained by Kemp represented his fee plus funds advanced for costs and expenses. We therefore fail to see how the judge could suggest that Kemp commingled his client's fund with his personal funds after the $5,000 disbursement to his client. To that extent we disagree with the judge's conclusion that Kemp violated DR 9–102(A).

With respect to Black, Judge Blackwell found that he violated DR 9–102(A) when he deposited the $1,250 from Travelers into his account. According to the judge, Black commingled this $1,250 with his own personal and business funds contained in that account. We disagree.

Similar to the $1,250 retained by Kemp, the $1,250 retained by Black represented his fee plus funds advanced for costs and expenses. Consequently, Black falls within the narrow exception set forth in DR 9–102(A) for funds advanced for costs and expenses. Although the far better

---

**5.** Under the proposed Rules of Professional Conduct, all property of a client or third person in a lawyer's possession must be placed in a trust account; no distinction is made regarding advances for costs and expenses. *See* Model Rule 1.15. This Rule would apparently prohibit the limited commingling permitted under the present rule.

practice is to maintain these funds in an identifiable bank account, we cannot conclude that Black violated this Rule. We therefore hold that the judge erred in finding that Black violated DR 9–102(A).

## EXCEPTION 4

■ Kemp and Black except to Judge Blackwell's conclusion that they violated DR 9–102(B)(3) by failing to maintain complete records of all funds of a client coming into the lawyers' possession and by failing to render an appropriate accounting to the client regarding these funds. Specifically, respondents contend that this particular rule does not indicate how soon a "complete record" must be maintained or when or how appropriate accounts are to be rendered to the client. On our view of the case, we cannot say that Judge Blackwell was clearly in error in reaching this conclusion. As an initial matter, the judge found that the respondents' explanation of the disbursement was not satisfactorily clear to the client. In addition, Judge Blackwell had the opportunity to determine whether the records maintained by respondents were complete with respect to this case. We therefore overrule this exception.

## III

Time and again this Court has stated "that sanctions imposed in disciplinary proceedings against an attorney are not for the purpose of punishing the individual, but are intended as protection to the public." *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *see, e.g., Attorney Griev. Comm'n v. Nothstein, supra,* 300 Md. at 686–87, 480 A.2d at 817; *Attorney Griev. Comm'n v. Mandel,* 294 Md. 560, 588, 451 A.2d 910, 923 (1982). The severity of the sanction, of course, generally depends upon the facts and circumstances of the case. *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984).

■ The record in the case *sub judice* shows that respondents violated DR 2–106(A) by applying a contingent fee arrangement to the Med. Pay coverage. We make clear that this Court will not tolerate this type of fee arrangement except in the most unusual circumstances. In addition, Kemp violated DR 9–102(A) by commingling his client's funds with his personal funds. In so doing, however, there is no indication that Kemp intentionally commingled these funds. Rather, it appears that Kemp desired to avoid disturbing his client by disbursing a non-printed check to her. It is also not without interest that this commingling existed for a relatively short period of time, and that no conversion of the funds occurred. Finally, we note that Kemp violated DR 9–102(B)(3) because he failed to maintain complete records and to render an adequate accounting to his client. For his part, Black violated DR 2–106(A) and DR 9–102(B)(3). Other than the instant disciplinary action, there is no evidence in the record indicating that either attorney has been subject to any other disciplinary action. Lastly, both respondents violated DR 1–102(A)(1).

After careful consideration of this matter, we conclude that under the circumstances a reprimand is the appropriate sanction. This reprimand means, of course, that it will forever be recorded among the reported opinions of this Court. Moreover, should respondents be involved in any future disciplinary actions this case will be taken into consideration. *See Attorney Griev. Comm'n v. Heinze,* 293 Md. 193, 197, 442 A.2d 570, 572 (1982).

IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RESPONDENTS. THESE COSTS SHALL BE APPORTIONED EQUALLY BETWEEN THE RESPONDENTS.