598 A.2d 233

CENTRAL HEIGHTS CONDOMINIUM ASSOCIATION, INC., PLAIN-
TIFF, v. THE LITTLE FALLS SAVINGS AND LOAN ASSOCIA-
TION, DEFENDANT–THIRD–PARTY PLAINTIFF–APPEL-
LANT, v. THE DEPARTMENT OF COMMUNITY AFFAIRS OF
THE STATE OF NEW JERSEY, THIRD–PARTY DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 17, 1991—Decided October 24, 1991.

Before Judges ANTELL, BAIME and THOMAS.

*James P. Brady* argued the cause for appellant.

*Eliaser Chaparro,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *Eliaser Chaparro,* on the brief).

The opinion of the court was delivered by ANTELL, P.J.A.D.

This suit was brought by a condominium association against a mortgagee in possession who completed construction of the condominium building after the builder defaulted. Defendant third-party plaintiff, Little Falls Savings and Loan Association (hereinafter "Little Falls"), appeals from an order for summary judgment dismissing its third-party complaint against the New Jersey Department of Community Affairs (hereinafter "DCA"). The dismissed pleading sought indemnification under the New Home Warranty and Builders' Registration Act, *N.J.S.A.* 46:3B–1, et seq., for whatever liability to the plaintiff might be imposed upon Little Falls. A brief explanation of the material legislative and regulatory context will be helpful.

The purpose of the New Home Warranty and Builders' Registration Act (hereinafter "Act") is to establish a fund of money sufficient to pay claims by owners against builders for new home defects. *N.J.S.A.* 46:3B–7. Administration of the program is confided to the Commissioner of the Department of

Community Affairs (hereinafter "Commissioner") who is authorized to prescribe by regulation a new home warranty and procedures to implement and process claims against the New Home Warranty Security Fund, *N.J.S.A.* 46:3B–3a.

Prior to engaging in the business of constructing new homes builders must register with DCA and obtain a certificate of registration, *N.J.S.A.* 46:3B–5. As a condition of registration, builders are required to participate in the New Home Warranty Security Fund (hereinafter "fund") and contribute thereto in amounts established from time-to-time by the DCA, *N.J.S.A.* 46:3B–7a. The scope and applicability of the warranty are dealt with by DCA under *N.J.A.C.* 5:25–3.1. Under *N.J.A.C.* 5:25–5.4(a) builders are obliged to contribute to the fund 0.4 percent of the purchase price of each new house when sold.

*N.J.S.A.* 46:3B–7c outlines the procedure to be followed by new home owners in pursuit of a claim based on defective performance under the warranty (the "State Plan"). The statute provides that all claims submitted by an owner must first be reviewed through conciliation or arbitration within DCA. Where the claim is found to have merit, the builder is directed to correct the defect. If the builder is unable or refuses to correct the defect, then an amount sufficient to cure the problem must be paid from the fund to the owner. In such cases, the statute authorizes the Commissioner to proceed against the builder in accordance with *N.J.S.A.* 46:3B–6b. By promulgating *N.J.A.C.* 5:25–2.5(a)7 DCA has interpreted the statute as authority to suspend or revoke the certificate of registration of any registrant who fails to correct or settle any claim for which the registrant's responsibility has been established through the dispute settlement procedure of the State Plan or of any private plan. However, *N.J.S.A.* 46:3B–9 specifically preserves to the owner all other legal rights and remedies legally available, with the proviso that once an owner initiates procedures to enforce a remedy the owner is barred from pursuing any other remedy. For discussions of this provision *see Haberman v. West Saddle Dev.*, 236 *N.J.Super.* 542, 566 A.2d 552 (App.Div.1989), and

*Postizzi v. Leisure + Technology*, 235 *N.J.Super.* 285, 562 *A.*2d 232 (App.Div.1989).

We now turn to the facts of this appeal.

On June 3, 1980, Little Falls made a $580,000 mortgage loan to a builder known as Patrician Homes, Inc., for a construction project to consist of 12 stores and 12 apartments. The project experienced financial difficulty, and Little Falls took title to the property through a Sheriff's deed on September 29, 1981, following a foreclosure proceeding. After taking title Little Falls altered the construction program to provide for 24 condominiums. In order to complete its plan, it was obliged to register under the Act and receive a certificate of registration.

Following application and payment of a fee, Little Falls received the registration status of a "mortgagee in possession," as provided for by *N.J.A.C.* 5:25–5.4(a)1. That regulation says that where the seller of a new home is not the builder who constructed it "such as a mortgagee in possession, receiver in bankruptcy, or executor of an estate," the seller must nevertheless participate in the program in the same manner as a builder. However, such sellers are distinguished under the regulation from builders in that they are permitted to contract with the builder for follow-up warranty services or they may, at their option, in the words of the regulation

> pay an additional 0.4 of one percent of the purchase price of the new home and be relieved of the obligation to provide such follow-up services. The State Plan shall then stand in his place and the Department [DCA] will inspect a new home for any defects. The list of defects will be attached to the Certificate of Participation as incompleted portions and will be excluded from the warranty coverage until completed under *N.J.A.C.* 5:25–3.3(d)1.

In accordance with the regulation, Little Falls paid the additional 0.4 percent of the purchase price of the new homes over the basic 0.4 percent required by the regulation. In return, Little Falls received from DCA a warranty transfer endorsement by which DCA accepted responsibility to provide required warranty follow-up services.

By mid 1984 Little Falls had sold all the units and each new condominium owner received a copy of the warranty transfer endorsement. On August 25, 1985, DCA changed the status of Little Falls from mortgagee in possession to that of a builder based on DCA's determination that Little Falls had made substantial departures from Patrician's original plan for construction. By this time complaints had already been received by DCA from owners alleging defects in construction. Following the change in Little Falls' status, the owners were notified by DCA that the warranty transfer endorsement would not be recognized and that the owners would have to resolve their dispute directly with Little Falls. Little Falls contested its change of status, and after a hearing in the Office of Administrative Law, the DCA Commissioner, by Final Decision of April 27, 1990, followed the recommended opinion of an Administrative Law Judge to restore Little Falls to the status of a mortgagee in possession.

Plaintiff condominium association filed its complaint herein on October 27, 1986, alleging breach of warranty by Little Falls because of defective construction. That case was settled August 10, 1990, by Little Falls' payment of $250,000. On June 22, 1990, the Law Division heard cross-motions for summary judgment on Little Falls' third-party complaint for indemnification under the warranty transfer endorsement against DCA, granting DCA's motion and denying Little Falls' motion. That determination was memorialized by order dated July 22, 1990.

The gist of the trial court's reasoning in granting summary judgment in favor of DCA is found in its belief that relief under the warranty transfer endorsement is available to a mortgagee in possession only where the dispute in question is the subject of an administrative proceeding provided for under *N.J.S.A.* 46:3B–7c. In acting on this belief, the trial court appears to have been under the apprehension that to rule otherwise would be in some way inconsistent with the Act's specific preservation of all other rights and remedies which

might be available to the owner under *N.J.S.A.* 46:3B–9. We are unable to conceive of how a contrary ruling might have interfered with the owners' choice of a remedy or in any other way prejudiced their interests. We find no basis in the legislation or the regulations from which to conclude that a mortgagee in possession enjoys the benefit of the warranty transfer endorsement when the owners seek their remedy within the administrative agency, but not when they seek relief in the courts. The owners' choice of remedy bears no relationship to the rights of a mortgagee in possession under the broad language of the regulation and warranty transfer endorsement.

Under the terms of the endorsement, the DCA "agrees to accept ... all responsibility for the correction, either through repair, replacement or monetary settlement, for those defects on the ... premises which occur and are declared to be valid pursuant to *N.J.A.C.* 5:25–3.1." The regulation referred to deals only with the extent, duration and the circumstances under which the new home warranty formulated by the DCA shall be applicable. Nothing therein precludes DCA's liability for defects where the owners seek relief in the courts.

Although the DCA argues that the owners' claims encompass a wider range of claims than is covered by the new home warranty, this does not constitute a reason to deny the DCA's liability under the endorsement. Those claims which are not covered by the endorsement can be separated out during the course of trial from those that do, and the DCA's liability determined only from the costs of repairing defects covered by the Act and regulations promulgated thereunder.

The final decision of the DCA Commissioner dated April 27, 1990, further supports our understanding as to DCA's responsibility. That document modifies the decision of the Administrative Law Judge "so as to make it clear that *N.J.A.C.* 5:25–5.4(a) is to be understood as giving a mortgagee in possession the absolute right to exercise the option of paying an additional premium in order to be relieved of the obligation to provide

follow-up services." Nowhere in that decision is the DCA's responsibility made to depend upon the fortuitous circumstance of whether the owner elects to seek a remedy in the courts or in the arbitration procedure of the administrative agency. Finally, as we noted earlier, *N.J.A.C.* 5:25–5.4(a)1 plainly states that upon payment of the additional premium the mortgagee is to be relieved of the obligation to provide follow-up services and that "[t]he State Plan shall then stand in his place."

■ No other conclusion may be drawn (1) from the language of the warranty transfer endorsement, (2) from the DCA Commissioner's Final Decision and (3) from the regulation which creates the status of mortgagee in possession, all of which were authored by the DCA itself,[1] than that the cost of correcting defects under the new home warranty must be borne by the DCA without regard to the forum selected by the owners to assert their claim. If we are incorrect in our interpretation, it clearly lies within the DCA's powers to express a contrary intent by amending its own regulation. *See, In re Adoption of N.J.A.C. 7:26B.,* 250 *N.J.Super.* 189, 222–23, 593 *A.*2d 1193 (App.Div.), *certif. granted,* 126 *N.J.* 385, 599 *A.*2d 162 (1991).

The order for summary judgment dated July 22, 1990, is reversed and the matter is remanded for trial on the third-party complaint.

---

[1]Whatever indefiniteness there may be is subject to the principle that ambiguous rules and regulations should be construed strictly against the administrative agency. *Ferguson v. Union National Bank of Clarksburg, W.Va.,* 126 *F.*2d 753, 758 (4 Cir.1942); *Darlington, Inc. v. Federal Housing Administration,* 142 *F.Supp.* 341, 353 (E.D.S.C.1956), *rev'd on other grounds,* 352 *U.S.* 977, 77 *S.Ct.* 381, 1 *L.Ed.*2d 363 (1957); 73 *C.J.S. Public Administrative Law and Procedure* § 94 at 614 (1983).