268 N.J. Super. 488 (1993)
633 A.2d 1060
THE TERRACE CONDOMINIUM ASSOCIATION, PLAINTIFF,
v.
MIDLANTIC NATIONAL BANK, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 19, 1993.
*492 John J. Stern, for plaintiff (Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys).
Douglas C. Borchard, Jr., for defendant (Evans, Hand, Allabough & Amoresano, attorneys).
KOLE, J.A.D., retired and temporarily assigned on recall.
Plaintiff, Terrace Condominium Association, (the "Association"), is a not for profit corporation of the State of New Jersey, formed to administer, manage and operate the common affairs of the unit owners of the residential condominium known as "The Terrace," and to maintain, repair and replace the common elements and limited common elements of said condominium.
On September 10, 1982, with about $1,000,000 worth of construction yet to be completed, the original builder of The Terrace gave a deed in lieu of foreclosure to its construction mortgagee, Midlantic National Bank/Citizens. Through subsequent name change and merger, Midlantic National Bank/Citizens is now known as the defendant, Midlantic National Bank ("Midlantic").
Subsequent to attaining ownership of the partially completed project, Midlantic represented to the public that it had assumed sponsorship of the condominium and had undertaken all responsibilities related to the construction of the condominium and the marketing of the residential condominium units. Thus, the master deed for The Terrace, as recorded by Midlantic, represents that, *493 as sponsor of the condominium, Midlantic intends to construct twelve condominium units, together with certain roads, driveways, and other improvements; and for purposes of the new home warranty and Builders' Registration Act (N.J.S.A. 46:3B-1 to -20.), apparently Midlantic registered with the Department of Community Affairs as a "builder," or successor to the developer, rather than as a mortgagee in possession. See Central Heights Condominium Ass'n v. Little Falls Savings & Loan Ass'n, 251 N.J. Super. 335, 598 A.2d 233 (App.Div. 1991).
Although some condominium units had already been sold, Midlantic engaged in construction. It remained in control of the Association until at least April of 1985. At that time, Midlantic was still the owner of a number of the condominium units, at least one unit of which was not in occupiable condition when primary construction was completed in 1986. Midlantic incurred about $1,000,000 in construction costs to complete The Terrace.
Located in the Borough of Fort Lee, The Terrace comprises 12 condominium units on 6 residential floors. Constructed and marketed as a luxury condominium, The Terrace boasted such amenities as working fireplaces, "Kohler environments," "talking elevators," extensive balconies, glassed-in rooms and panoramic views of New York City.
Since The Terrace was first occupied in 1986, its residents have been beset with a number of problems. Included among such problems is substantial water infiltration into and water damage in the condominium units, in the limited common elements, and in the common elements. In addition, terrace surfaces have manifested construction defects, and the fireplaces have been inoperable without creating smoke conditions in other units of the building. Such problems were brought to Midlantic's attention by the Association. The Association hired a firm of engineering consultants, Kipcon Inc., to prepare a report which would analyze the problems. This report was completed in February of 1987, and the Association gave it to Midlantic.
*494 Midlantic endeavored to meet the Association's complaints and remedy the foregoing problems until late 1988 or early 1989. It used the Kipcon report supplied to it by the Association as a guide to the defects requiring remediation. The primary concern was with complaints of leaking at the windows and terraces on the upper floors and water seepage in the exterior walls. The work that Midlantic thus performed at The Terrace was with the asserted purpose of remedying the foregoing problems. However, although performed as a good faith remedial endeavor, much of the work consisted of short-lived or improper repairs to the most significant of the above problems and generally had the effect of concealing the true causes of the problems. Midlantic's failure to properly correct many of the condominium's construction defects adversely affected the habitability of the condominium, including its common elements and limited common elements. Furthermore, in many respects, Midlantic misconceived its duty to repair as one of maintenance for a limited period of time, thereby placing the onus of the expense of repair on the Association.
In or about the end of 1988 or early 1989, Midlantic ceased all remedial activity at The Terrace without fully curing the problem areas. Shortly after Midlantic ceased making repairs, the Association commissioned and paid for various professional studies in an attempt to identify the causes of the problems and their most reasonable remedies.
These studies revealed that many of the problems at The Terrace were the result of various patent and latent defects, both structural and otherwise, in and about the condominium units, limited common elements and common elements. All of these defects were caused by improper workmanship and the use of substandard (and, in some instances, missing) materials in the construction of the building project.
I find that the Association demonstrated the specific construction defects and associated costs of remediation which follow. I further find that the stated remedies for these defects are necessary and that the indicated costs thereof are reasonable. [The *495 court discussed each defect and the reasonable cost of remediation.]
All of the defects, representing $157,300 in curative costs, are the result of inferior workmanship and materials in the construction of The Terrace. Moreover, essentially all of such defects adversely affect the habitability of the premises, particularly in light of the fact that each unit was marketed as a luxury condominium.
In effecting in good faith what it deemed to be the remedial work required in order to satisfy the Association's complaints, Midlantic spent somewhat in excess of $78,000. Although such work did not fully correct all of the defects, some of it did ameliorate the problems involved and was of benefit to the Association. Cf. Saint Barnabas Medical Center v. Essex County, 111 N.J. 67, 79-80, 543 A.2d 34 (1989); Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 305-07, 191 A.2d 483 (App.Div. 1963). Indeed, the Association's expert witness Gehorsam indicated as much, at least as to the parapets.
After considering the evidence relating to its repair work, I am satisfied that Midlantic has conferred a benefit on the Association to the extent of $25,000.
Midlantic contends that since the unit owners purchased their condominiums at what it considers bargain prices, plaintiff can not claim that the unit owners bought with the expectation that they would be in a luxury building. But the fact is that the units were sold by Midlantic as luxury apartments with the concomitant amenities. In any event, in view of the foregoing defects, it cannot be said that the purchasers are attempting to upgrade their purchase at Midlantic's expense.
The defendant, as the developer, sponsor, and builder of The Terrace, had an obligation to construct the condominium so that it would be of reasonable workmanship and be fit for its particular use: habitation. Aronsohn v. Mandara 98 N.J. 92, 484 *496 A.2d 675; McDonald v. Mianecki, 79 N.J. 275, 293, 398 A.2d 1283 (1979).
I find that plaintiff proved, by a preponderance of the credible evidence, that the exterior walls of the condominium, parking decks, terraces, front planters and fireplaces were defective to such an extent that the implied warranties of habitability and reasonable workmanship were breached by Midlantic. It is of no moment that Midlantic is not generally in the business of constructing condominiums. Such a warranty arises whenever a consumer purchases from one "who holds himself out as a builder-vendor of new homes." McDonald, supra, 79 N.J. at 293, 398 A.2d 1283. The purchaser relies upon his "knowledge and skill, and he impliedly represents that he is qualified to erect a habitable dwelling. He is also in a better position to prevent the existence of major defects." Id. at 294, 398 A.2d 1283.
This is not a case, as Midlantic argues, where the claimed defective materials and workmanship give rise simply to a maintenance problem which the Association must assume at its own cost. Midlantic, despite its unsuccessful attempts at fully remedying the defects, is still responsible for correcting construction defects that adversely affect the habitability of the condominium or that substantially interfere with the occupants' appropriate use of the condominium, which includes the common elements and limited common elements.
I find that, under the circumstances of this case, Midlantic was the "builder" and developer and not merely a "mortgagee-in-possession" and is thus liable for any breach of the implied warranty of reasonable workmanship as well as any breach of the implied warranty of habitability. Midlantic was more than a mere vendor. At all times, it held itself out as the party responsible for the construction of The Terrace, as well as being its developer and sponsor. It recorded documents in which it declared that it was the builder; it engaged in substantial construction of the building, spending about $1,000,000 to complete it; it acted as developer, *497 sponsor and marketer; and it represented to the Department of Community Affairs that it was the builder.
Midlantic seeks to immunize itself by claiming that it is not a builder with respect to The Terrace and that non-builders cannot be liable for breaches of the implied warranty of reasonable workmanship. According to Midlantic, it is liable only for the distinct and separate implied warranty of habitability, and Midlantic claims that The Terrace is habitable.
Defendant's argument is unpersuasive. At the time of the defective construction, it appears, Midlantic was already more than a lender, and, as such, had an obligation to subsequent purchasers regarding the condition or quality of that work. See Postizzi v. Leisure + Technology, Inc., 235 N.J. Super. 285, 562 A.2d 232 (App.Div. 1989). Contrast Rzepiennik v. U.S. Home Corp., 221 N.J. Super. 230, 238, 534 A.2d 89 (App.Div. 1987).
In any event, since Midlantic took over construction, it must be held to have assumed all of the obligations and responsibilities of the initial builder and developer and to have become a full-fledged "builder-vendor," responsible for all defects, including those beyond the scope of what it perceives to be its own limited construction activities. Even though Midlantic may not have built the entire structure or the parking facilities, and may not have applied the outside wall covering, it did assume the obligations of the builder of the project. It should be noted that a mortgagee-in-possession can be liable for defective construction. See Central Heights Condominium Ass'n v. Little Falls Savings & Loan Ass'n, supra, 251 N.J. Super. at 335, 598 A.2d 233.
Finally, a breach of the implied warranty of reasonable workmanship may also constitute a breach of the implied warranty of habitability if the condition is sufficiently serious to affect the dwelling's habitability. Aronsohn v. Mandara, 98 N.J. 92, 105, 484 A.2d 675 (1984). Such is the case here. A number of the problems, including the leakage into the units, terraces and parking decks, and the dampness on the outside walls, are substantial *498 and serious enough to constitute breaches of the habitability warranty. Freedom from exposure to the elements certainly is a matter of habitability. This is particularly so where, as here, the project purports to be a luxury condominium.
Midlantic also raises a statute of limitations defense.
The warranties on which the bank relies are the express statutory warranties promulgated under the New Home Warranty and Builders' Registration Act ("HOW") and the Planned Real Estate Development Full Disclosure Act ("PREFDA"). The bank contends that since it is not a builder and The Terrace is habitable,[1] its responsibilities are limited to those under HOW and PREFDA. The warranties thereunder apply to "developers." According to Midlantic, the statute of limitations prescribed by HOW and PREFDA has run as to those statutory warranties, precluding any recovery by plaintiff. Before analyzing the merits of defendant's statute of limitations argument, a brief discussion of the PREFDA and HOW warranties is in order.

I. PREFDA WARRANTIES
In PREFDA, the Legislature provided that the Division of Housing and Urban Renewal of the State Department of Community Affairs shall adopt such rules and regulations as are reasonably necessary for the enforcement of the provisions of the Act. The rules may contain provisions requiring the developer to give a fair and reasonable warranty on construction of any improvements. N.J.S.A. 45:22A-35(a). The Division of Housing and Urban Renewal adopted the following warranty provisions:

WARRANTY ON CONSTRUCTION.
a. The developer ... shall warrant the construction of the unit or interest as provided in [HOW].

*499 b. The developer ... shall, in addition to the warranties required under [HOW], warrant the following to be free from defect due to material and workmanship for a period of one year from the date of possession or settlement: outbuildings, driveways, walkways, patios, retaining walls and fences. The developer shall also warrant that all drainage is proper and adequate and that all off site improvements are free from defects for a period of one year from the date of construction.
c. Developer shall warrant that all lots, parcels, units or interests are fit for their intended use.

[N.J.A.C. 5:26-7.1.]

WARRANTY ON CONSTRUCTION OF COMMON FACILITIES.
a. The developer ... shall warrant the construction of the common facilities for a period of two years from the date of completion of each of the common facilities;
b. The developer shall warrant that the common facilities are fit for their intended use;
c. The developer shall repair or correct any defect in construction, material or workmanship in the common facilities within a reasonable time after notification of the defect.

[N.J.A.C. 5:26-7.2.]

II. HOW WARRANTIES
Through the HOW statute, new home warranties were established as follows:
(1) One year from and after the warranty date the dwelling shall be free from defects caused by faulty workmanship and defective materials due to noncompliance with the building standards as approved by the [Commissioner of the Department of Community Affairs ...].
(2) Two years from and after the warranty date the dwelling shall be free from defects caused by faulty installation of plumbing, electrical, heating and cooling delivery systems; however, in the case of appliances, no warranty shall exceed the length and scope of the warranty offered by the manufacturer.
(3) Ten years from and after the warranty date for major construction defects. [According to the definitional section of HOW, N.J.S.A. 46:3B-2, a major construction defect means "any actual damage to the load bearing portion of the home."]

[N.J.S.A. 46:3B-3.]
Defendant's statute of limitations argument is without merit. It should be noted that plaintiff has not premised any cause of action upon the breach of a PREFDA warranty or a HOW *500 warranty. Rather, plaintiff has based its cause of action upon an alleged breach of the implied warranties established under McDonald v. Mianecki, supra, 79 N.J. at 275, 398 A.2d 1283 i.e., the common law.
Further, plaintiff's rights are not limited to those prescribed by PREFDA and HOW. These statutes provide rights, obligations, and remedies that are supplementary to, and not exclusive of, those provided by the common law.
With regard to HOW, the statute itself provides that its remedies are non-exclusive. N.J.S.A. 46:3B-9. See also McDonald, supra, 79 N.J. at 287, 398 A.2d 1283; Central Heights Condominium Ass'n, supra, 251 N.J. Super. at 337, 598 A.2d 233.
PREFDA does not explicitly state that its remedies are non-exclusive. However, there is nothing in the statute itself, or any evidence of a statutory intent, indicating that its rights and remedies are exclusive. Unless there is a clear legislative expression to the contrary, a statutory right or remedy does not preempt an existing common law right or remedy; but, rather, is deemed to be additional to or cumulative of the latter. See DeFazio v. Haven Savings and Loan Ass'n, 22 N.J. 511, 519, 126 A.2d 639 (1956); Blackman v. Iles, 4 N.J. 82, 89, 71 A.2d 633 (1950); Wildstein v. Tru Motors, Inc., 227 N.J. Super. 331, 335, 547 A.2d 340 (1988). There is no such clear legislative expression in PREFDA. Contrast Spring Motors Distrib., Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985) (dealing with a uniform statute, the U.C.C., by which "the Legislature adopted a carefully-conceived system of rights and remedies to govern commercial transactions").
Even assuming that plaintiff is bound by the limitation periods in PREFDA and HOW and the two year warranty limitations therein were applicable in this case, nonetheless defendant is equitably estopped from arguing that plaintiff failed to file its complaint within that period. Until late 1988 or early 1989, defendant attempted actively to repair the construction defects, *501 and used the Kipcon report submitted to it by plaintiff as a guide with respect thereto. By its conduct, defendant represented to the Association, at least impliedly, that it would fully remedy the problems so that the building would satisfy the warranties of habitability and good workmanship and materials. Plaintiff relied thereon in good faith and thus delayed pursuing its remedy until July 12, 1990, when the complaint was filed. Since plaintiff filed its complaint within two years after defendant completed its unsuccessful repair work, under principles of equitable estoppel, the two year statute of limitations did not run with respect to any applicable PREFDA or HOW warranty. See Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449, 217 A.2d 617 (1966), cert. denied sub nom., Mount Vernon Fire Ins. Co. v. Highway Trailer Co., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966); Biocraft Laboratories, Inc. v. USM Corp., 163 N.J. Super. 570, 573, 395 A.2d 521 (App.Div. 1978); Torcon, Inc. v. Alexian Bros. Hosp., 205 N.J. Super. 428, 436-437, 501 A.2d 182 (Ch.Div. 1985), aff'd, 209 N.J. Super. 239, 507 A.2d 289 (App.Div. 1986).
In any event, the PREFDA warranties of fitness for an intended use (N.J.A.C. 5:26-7.1(c); N.J.A.C. 5:26-7.2(b)) do not provide for any specific time limitation. There is no indication in the statute that these habitability-type warranties only last for a specified time or that a claim thereto must be made within such a period.
The remedy elected by plaintiff herein involves obtaining relief for breaches of the common law implied warranties established by the Supreme Court in McDonald v. Mianecki, supra, 79 N.J. at 275, 398 A.2d 1283. The PREFDA and HOW warranties do not displace such implied warranties. The applicable limitation period with respect to plaintiff's cause of action is the usual six year limitation period provided by N.J.S.A. 2A:14-1. That statute states that "every action at law... for any tortious injury to real or personal property ... or for recovery upon a contractual claim or liability, express or implied, not under seal ... shall be commenced within 6 years next after the cause of such action shall *502 have accrued." Thus, whether the breach of implied warranty is deemed contractual or tortious in nature, the six year statute of limitations applies. See Lavin v. Hackensack Bd. of Ed., 178 N.J. Super. 221, 227-229, 428 A.2d 918 (App.Div. 1981), aff'd, 90 N.J. 145, 447 A.2d 516 (1982). Bergen Community College Trustees v. J.P. Fyfe, Inc., 188 N.J. Super. 288, 293, 457 A.2d 83 (Law Div. 1982), aff'd on other gds., 192 N.J. Super. 433, 471 A.2d 38 (App.Div. 1983), certif. denied, 96 N.J. 308, 475 A.2d 598 (1984); Hermes v. Staiano, 181 N.J. Super. 424, 428-430, 437 A.2d 925 (Law Div. 1981). See also Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 414-417, 161 A.2d 69 (1960).
As plaintiff filed its action on July 12, 1990, it is necessary to determine whether the six year statute of limitations had expired as of that date. Plaintiff maintains that its cause of action accrued in September of 1988, when defendant "ceased its ineffective remedial construction and renounced its duty to make the warranties true." Whether or not this is so, I am satisfied that that plaintiff filed its action before the six year statute of limitations ran.
New Jersey courts have consistently applied the "discovery rule" with respect to statute of limitations issues. The discovery rule is an equitable principle by which an accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence, should have discovered, that he or she may have a basis for an actionable claim. Once the injured party knows that it has been injured and that the injury is the fault of another, whose identity is known, it has the requisite knowledge for the period of limitations to commence running. Torcon, supra, 205 N.J. Super. at 435, 501 A.2d 182. See also Lynch v. Rubacky, 85 N.J. 65, 70, 424 A.2d 1169 (1981).
In the case at hand, primary construction continued until at least 1986. It was at this time that the Association learned of the construction problems in the building or reasonably should have learned of those problems. Therefore, the cause of action *503 accrued in any event in 1986, well within the applicable statute of limitations period.
The fact that the Bank was willing to, and in fact did, make settlements with several individual condominium owners in accordance with its obligations under HOW does not in any way indicate that the Association's remedy is limited to the provisions of HOW or PREFDA. If a unit owner has a claim under HOW, that does not mean that the Association does not have a different claim for the common elements and limited common elements under the common law. See Postizzi, supra, 235 N.J. Super. at 289-291, 562 A.2d 232. Moreover, until April 1985, the unit owners had no control of the Association, and should not be bound by the period of time prior thereto. Even if each unit owner could have sued the Bank while the Bank was in control of the Association, Siller v. Hartz Mountain Assoc., 93 N.J. 370, 381-382, 461 A.2d 568 (1983), cert. denied, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983), it may well be that ordinarily the right to make such claims should be tolled or deferred until the unit owners control the association. But here, until late 1988 or early 1989, the Bank was endeavoring to remedy the defective work and material, and the Association, as well as the unit owners, could rightly assume that such remedial work would correct the problems involved. It was not until then, when the Bank refused to proceed further despite the continued existence of those problems, that, predicated on principles of equitable estoppel (already discussed), the time can be said to have begun to run against the unit owners or the Association, even if the HOW or PREFDA limitation periods applied in this case.

Conclusion
For the foregoing reasons, judgment is entered in favor of plaintiff and against defendant in the amount of $132,300.
NOTES
[1] I have found, however, in this case, that the habitability of The Terrace was substantially adversely affected by the defects. I have further found the Bank to be the builder or to have assumed the obligations of the builder.