IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Altoona First Savings Bank, a : 
Pennsylvania Chartered Mutual : 
Savings Bank : 
 : 
 : 
 v. : 
 : 
The Township of Logan, a political : 
subdivision of the Commonwealth : 
of Pennsylvania, Richard E. Himes : 
and Mary C. Himes : 
 : No. 346 C.D. 2020
Appeal of: Township of Logan : Argued: May 12, 2021

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE FIZZANO CANNON        FILED: December 22, 2021

The Township of Logan (Township) appeals by permission from an interlocutory order of the Court of Common Pleas of Blair County (trial court). The trial court granted partial summary judgment in favor of Altoona First Savings Bank (Bank) in the Bank's declaratory judgment action against the Township and Richard E. Himes and Mary C. Himes (Developers). The trial court concluded the Bank is not obligated to complete development infrastructure at its own cost on property it

acquired at a sheriff's sale pursuant to a mortgage foreclosure against that property, which was formerly owned by Developers. Upon review, we vacate the summary judgment order and remand this matter to the trial court for further proceedings.

## I. Background

In August 2006, Developers obtained approval from the Township for an 82-lot real estate development project known as Phase II of Castle Farms (Project). Reproduced Record (R.R.) 27a-28a. The Township's approval of the Project was subject to terms and conditions memorialized in a recorded Developers Agreement, as later amended. *See* R.R. 14a-42a. The Developers Agreement provided that the "Agreement and all of its terms and conditions shall extend to and be binding upon the parties hereto and upon their respective heirs, executors, administrators, successors and assigns." R.R. 41a. The Developers Agreement also provided that any ambiguity found within it would be construed in favor of the Township. *Id.*

The Developers Agreement required Developers to obtain a performance bond to guarantee completion of infrastructure for the Project, including roads, curbs, storm water management facilities, erosion control, sanitary sewers, and fire suppression tanks. R.R. 29a-40a. Developers obtained a performance bond for infrastructure costs in the amount of $2,313,604 from Commonwealth Insurance Company (Insurer). R.R. 71a.

After the Township approved the Project in August 2006, the Bank loaned Developers $2,250,000 secured by a promissory note and a mortgage. R.R. 157a-58a & 160a-66a. The property subject to the mortgage included the real property to be developed in the Project, as well as other real property. R.R. 165a.

2

At the time the Bank made the loan, the subdivision plan had been approved and the Developers Agreement executed, and the Bank relied on the approved subdivision plan and the executed Developers Agreement in extending financing. R.R. 8a. Further, the mortgage instrument expressly described the collateral as including, in part, property with a metes and bounds description that was preceded by a declaration that the parcel was "known as Castle Farms Subdivision, Phase II . . ." and followed by a statement that the parcel was "intend[ed] to be described in accordance with a certain Plan of Survey done by Innovative Consulting Group, Inc., under date of May 6, 2005, and intend[ed] to be the entire portion of the premises known as Castle Farms Subdivision Phase II." R.R. 168a & 170a.

Developers subsequently defaulted on the loan, and the Bank filed an action in foreclosure in July 2008. R.R. 152a-55a. In January 2009, Insurer suggested Developers were in default on their obligations under the performance bond. *See* R.R. 50a. In February 2009, the Bank's counsel sent a demand letter to the Township, taking the position that Developers' default under the terms of the performance bond was also a default under the Developers Agreement. R.R. 50a. The Bank's counsel asserted the Township was obligated under the Developers Agreement to proceed against Insurer on the performance bond, and that the Township's failure to "acquire . . . those funds needful or necessary in order to effectuate completion of the roadway, and . . . immediately thereafter proceed with installation and construction of the said roadway" diminished the value of the property subject to the mortgage. R.R. 50a-51a. Demanding that the Township proceed with a claim against the performance bond, the Bank's counsel stated the "anticipated completion of the roadway was a factor in the Bank making a

3

commercial loan to [Developers] in connection with the completion of that [P]roject. The Bank fully relied upon the viability and enforceability of the Developer[]s Agreement." *Id.*

In May 2009, at a sheriff's sale in execution on its mortgage foreclosure, the Bank obtained title to the property subject to the mortgage, including the property approved for the Project. R.R. 99a-105a.

The record does not reflect any claim by the Bank or the Township against Insurer under the performance bond.[1] In March 2014, this Court entered an Order of Liquidation against Insurer. R.R. 80a. Pursuant to that order, all surety bonds under which Insurer had any obligations remained in force for not more than 30 days after entry of the order. R.R. 83a.

In subsequent discussions between the Township and the Bank, the Township asserted that the Bank, by purchasing the property at the sheriff's sale, had succeeded to Developers' obligations relating to the Project under the Developers Agreement and was required either to complete the infrastructure for the Project or obtain a new performance bond to guarantee the cost of such infrastructure. R.R. 53a & 56a-57a. The Bank, however, took the position that although it acquired title to the real property, it was not the Project's "developer" and was neither a party to nor bound by the Developers Agreement. *See, e.g.*, R.R. 10a-11a & 56a.

The Township offered to release the Bank from all obligations and conditions of the Township's land development approval for the Project as reflected in the Developers Agreement, provided the Bank met certain conditions, including presentation of a new land development plan eliminating Phases 2B and 2C from the

---

[1] The Township contends it had no duty to proceed against the bond. Reproduced Record (R.R.) 64a.

4

approved development, along with consents from all the lot owners of Phase 2A to release their rights concerning completion of infrastructure pertaining to Phases 2B and 2C. R.R. 56a. The record does not indicate that the parties ever reached an agreement.

The Bank commenced a declaratory judgment action against the Township and Developers, seeking declarations that the Bank is not a "developer" or "applicant" as defined by Section 107 of the Pennsylvania Municipalities Planning Code (MPC),[2] 53 P.S. § 10107; that the Bank is neither a party to nor bound by the Developers Agreement as a successor or assignee; that the Township's failure to file a claim against the performance bond makes the Township liable for the costs of completing the infrastructure; and that Developers are liable for the infrastructure costs. R.R. 6a-13a.

The Bank and the Township filed cross-motions for partial summary judgment. R.R. 142a-51a. By order dated February 13, 2020, the trial court granted partial summary judgment in favor of the Bank, finding (1) the Bank is not an applicant or developer, as defined by the MPC, based on its purchase of the property in a judicial foreclosure proceeding, and (2) the Bank is not a party or successor to, and not an assignee of, the Developers Agreement.[3] R.R. 228a. The parties did not raise in their cross-motions for summary judgment the question of whether the Township was liable for the costs of completing the infrastructure due to its failure

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[3] The cross-motions for summary judgment raised parallel issues. In addition to the two issues raised on appeal before this Court, the Township asserted the statute of limitations as a bar to the action. The trial court rejected that argument, R.R. 226a-27a, and the Township has not raised it again before this Court. The Bank also sought summary judgment on the basis that public policy proscribed imposing liability against it; the trial court did not reach that issue because it disposed of the Bank's summary judgment motion on other grounds. R.R. 226a.

to proceed against the performance bond. *See* R.R. 142a-50a. Therefore, the trial court's partial summary judgment decision did not address that question, and it is not before us on appeal.

On March 9, 2020, on motion of the Township, the trial court amended its previous order to provide that its interlocutory order involves controlling questions of law as to which there is a substantial basis for difference of opinion, that an immediate appeal may materially advance the ultimate termination of this matter and is in the public interest. R.R. 237a-38a. By order dated June 11, 2020, this Court granted the Township's petition for an immediate interlocutory appeal. *See* R.R. 5a.

## II. Issues

On appeal,[4] as in the trial court, the primary legal dispute between the Bank and the Township concerns whether the Bank, by purchasing the real property securing its mortgage at the sheriff's sale, stepped into Developers' shoes and

---

[4] "We review a trial court's grant of summary judgment for an abuse of discretion or error of law. In so doing, our scope of review is plenary, and we apply the same standard on appeal to the summary judgment motion as before the trial court." *Romutis v. Borough of Ellwood City*, 246 A.3d 361, 365 (Pa. Cmwlth. 2021) (citing *Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1165 (Pa. 1997)). Summary judgment is proper:

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.Civ.P. 1035.2.

6

became responsible for the infrastructure required on the Project under the Developers Agreement. The Township asserts two arguments on appeal. First, the Township contends the Bank is an applicant because it is a successor to the landowner and/or a successor to the developer within the meaning of the MPC. *See* Br. of Township at 12-27; Reply Br. at 5-7. Therefore, the Township contends the Bank is bound by law to comply with the statutory infrastructure requirements. *Id.* Second, the Township reasons that the Bank has availed itself of the advantages of the approved subdivision for the Project by marketing the Project as a development and by selling a number of the individual lots, and in so doing, the Bank has become bound as a successor to the Developers Agreement and is responsible for the associated infrastructure. *See* Br. of Township at 27-29; Reply Br. at 2.

In response, the Bank argues that in purchasing the property at the sheriff's sale, it did not intend to act as a developer regarding the Project, but instead was merely trying to recoup its losses on the loan secured by the mortgage. The Bank asserts it is not an applicant or developer under municipal law. The Bank further insists that a mere purchase of property could not make it either a party or a successor to the Developers Agreement. Br. of Bank at 9-22.

## III. Discussion

Under Section 509 of the MPC, a municipality's final approval of a subdivision development plan requires that an "applicant" either complete the necessary infrastructure or post satisfactory security guaranteeing infrastructure completion. *See* 53 P.S. § 10509(a). Here, the Township's subdivision and land development ordinance (SALDO) contains a substantially identical requirement. *See* LOGAN TWP., BLAIR CNTY., PA., CODE OF ORDINANCES, ch. 22, § 306A.(1)

7

(2020); *see also Stivala Invs., Inc. v. S. Abington Twp.*, 815 A.2d 1, 5 (Pa. Cmwlth. 2002) (citing Section 101 of the MPC, 53 P.S. § 10101) (noting the MPC is merely enabling legislation allowing a municipality to enact an implementing SALDO, including provisions governing how infrastructure will be funded during a property's development). Developers originally posted security in the form of a bond issued by Insurer, but that security expired, at the latest, 30 days after this Court entered an Order of Liquidation against Insurer in March 2014. R.R. 80a & 83a. The Township asserts that the Bank is now liable for completion of the infrastructure for the Project as an applicant under the MPC.

Section 107 of the MPC defines an "applicant" as "a landowner or developer, as hereinafter defined, who has filed an application for development[,] including his heirs, *successors* and assigns." 53 P.S. § 10107 (emphasis added). Again, the SALDO contains an identical provision. LOGAN TWP., BLAIR CNTY., PA., CODE OF ORDINANCES, ch. 22, § 201 (2006). Thus, one may become an "applicant," and thereby become responsible for infrastructure relating to a development, *either* as a successor to a "landowner" *or* as a successor to a "developer."

The parties dispute whether the Bank, after purchasing the real property approved for the Project at the sheriff's sale, became Developers' successor applicant as either a successor to the landowner or successor to the developer within the meaning of the MPC and the SALDO. Status as a successor to the landowner or a successor to the developer notwithstanding, the parties dispute whether the Bank, by its actions or inactions, has availed itself of the advantages of the approved subdivision for the Project by marketing the Project as a development and by selling

8

a number of the individual lots, and in so doing, has become bound as a successor to the Developers Agreement responsible for the associated infrastructure.[5]

## A. Successor Landowner Status

The Township argues that the trial court erred by granting summary judgment and holding that the Bank is not the successor landowner under the MPC, and therefore not the successor "applicant" as defined in Section 107. A "landowner" is "the legal or beneficial owner or owners of land . . . or other person having a proprietary interest in land." 53 P.S. § 10107. It is undisputed that Developers were the landowners who filed an application for development and "applicants" under the MPC/SALDO. *See* R.R. 7a-8a, 58a-59a & 116a. It is also undisputed that the Bank became a landowner when it purchased property at the sheriff's sale. Notably, to be a successor "applicant," the successor "landowner" need not itself make or cause to be made a subdivision or land development application; the successor applicant can be the "successor" to the landowner that made such a filing. 53 P.S. § 10107; *Stivala*, 815 A.2d at 6 (an "applicant" is "a *landowner* or *developer*, as hereinafter defined, who has filed an application for development[,] including his heirs, *successors* and assigns") (bold deleted; italics added). Accordingly, as the Bank made no application for land development on its own behalf, one relevant inquiry is whether the Bank was the successor to the landowner who did make such an application.

Neither the MPC nor the SALDO defines the term "successor." Contrary to the Bank's assertion, "successor" is not necessarily a term of art. This

---

[5] As stated above, the Township argues alternately that the Bank is a successor developer under the MPC and SALDO, and/or under the Developers Agreement. Our discussion of the Bank's potential status as a successor developer under each alternate argument is subsumed within Section B of the discussion below.

9

Court has explained that "since 'successor' is a word of common usage, consideration of its dictionary definitions and other sources is appropriate." *TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 910 (Pa. Cmwlth. 2004).

> Both legal and English dictionaries, as well as the Pennsylvania Rules of Civil Procedure, contain similar definitions for the term "successor." Black's Law Dictionary defines "successor" as "[o]ne that succeeds or follows; one who takes the place that another has left, and sustains the like part or character." Black's Law Dictionary 1431 (6th ed. 1990). The American Heritage Dictionary offers a similar definition: "[o]ne that succeeds another." American Heritage Dictionary of the English Language[] 1728 (4th ed. 2000). This same dictionary defines "succeed" as "to come after and take the place of." *Id*. The Rules of Civil Procedure define "successor" as "[a]nyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa. R.C[iv].P. [] 2351. Common to all these definitions is the concept that, *by assuming the interests of another, one takes the other's place*.

*TIG*, 855 A.2d at 910 (emphasis added). Thus, whether the Bank is a successor landowner to Developers under the MPC and the SALDO depends on whether the Bank assumed Developers' interest in the land that was subject to the approved plan for the Project. The Bank insists it did not assume any interest in the Project merely by purchasing land at a sheriff's sale. The parties strenuously dispute whether the Bank intended to and assumed Developers' interest in the development. However, to be the successor landowner, one only needs to assume the proprietary interest of the landowner applicant it has succeeded.

An examination of *Stivala* is relevant on this point. Although the facts of *Stivala* are analogous to those presented in this case, the parties take different positions on *Stivala's* applicability here. *See* Br. of Township at 15-19 & 24-26; Br. of Bank at 8 & 15-16.

10

In *Stivala*, the original developer provided the township with a letter of credit as security for the completion of the infrastructure for an approved subdivision to develop a townhouse project, but the letter of credit expired before the infrastructure was complete. 815 A.2d at 2-3. The plaintiff corporation later purchased the property from the original developer and then brought a mandamus action seeking to force the township to accept dedication of a road, issue building permits, and complete the subdivision's infrastructure at taxpayer expense. The purchaser contended that because the township had not forced the original developer to complete the infrastructure or maintain the letter of credit pursuant to Section 509(a) of the MPC,[6] the township was responsible to complete the infrastructure. *Id.* at 3-4.

This Court disagreed and affirmed dismissal of the corporate purchaser's action. We acknowledged that in some circumstances where a municipality approves a subdivision without requiring completion or a guarantee of

---

[6] Section 509(a) of the MPC provides:

> (a) No plat shall be finally approved unless the streets shown on such plat have been improved to a mud-free or otherwise permanently passable condition, or improved as may be required by the subdivision and land development ordinance and any walkways, curbs, gutters, street lights, fire hydrants, shade trees, water mains, sanitary sewers, storm sewers and other improvements as may be required by the subdivision and land development ordinance have been installed in accordance with such ordinance. In lieu of the completion of any improvements required as a condition for the final approval of a plat, including improvements or fees required pursuant to section 509(i), the subdivision and land development ordinance shall provide for the deposit with the municipality of financial security in an amount sufficient to cover the costs of such improvements or common amenities including, but not limited to, roads, storm water detention and/or retention basins and other related drainage facilities, recreational facilities, open space improvements, or buffer or screen plantings which may be required.

53 P.S. § 10509(a).

11

completion of the infrastructure, the municipality may be obligated to complete that infrastructure at its own expense. *Stivala*, 815 A.2d at 5 (citing *Safford v. Bd. of Comm'rs, Annville Twp.*, 387 A.2d 177 (Pa. Cmwlth. 1978)[7] (directing township to complete roads, where individual owners purchased lots with road designations and township offered no reason not to complete those roads)). However, in *Stivala*, we concluded that because the corporate purchaser had *"purchased the entire property with the intent to develop it,"* the purchaser was an "applicant" or "developer" under Section 509 of the MPC and therefore "would be primarily responsible for the improvements if it decided to go ahead with the [d]evelopment." *Id.* at 6 (emphasis added). Stivala pleaded in its complaint that it was the owner and controller of the development. *Id.* It was clear that Stivala had purchased the entire development, and it was equally clear that Stivala availed itself of the benefits of the development agreement. *Id.* at 7. We concluded that "[b]y doing so, [Stivala] assumed the rights and obligations of the original developer" and stood in the developer's shoes; Stivala could not assume the benefits of the agreements between the township and the original developer without the accompanying obligations, including completion of the infrastructure. *Id.*

_____

[7] In *Safford v. Board of Commissioners, Annville Township*, 387 A.2d 177 (Pa. Cmwlth. 1978), this Court posited that the municipality's "feckless" administration of its subdivision regulations could subject it to liability to individual lot owners for the costs of providing infrastructure not completed by a developer. *Id.* at 182. Here, the Bank asserted in its complaint, although it does not argue in its brief, that the Township was "reckless" in its administration of its ordinance because it did not proceed against Insurer on the bond for completion of the Project's infrastructure in 2009. R.R. 12a. *Safford*, as an action by individual lot owners, is inapplicable. Moreover, here, the Township denied any obligation to proceed against the bond. R.R. 61a-62a. A Township fact witness explained the Township was told by Insurer that the bond would remain in place despite any default in payments to Insurer by Developers relating to the bond. R.R. 203a; *see also* R.R. 89a (averring that the "[b]ond was extended from time to time"). Further, the Township saw no need to proceed on the bond because, at the time, no immediate development of the Project was contemplated for which infrastructure would be needed. R.R. 204a. Thus, there are issues of fact that would preclude any determination as a matter of law that the Township acted recklessly in forgoing action on the bond.

In *Stivala*, we did not address whether the purchaser was the successor "landowner" and therefore the successor applicant responsible for the infrastructure, because we determined that Stivala was the successor "developer" under the MPC and the successor developer under the developer's agreement. *Stivala*, 815 A.2d at 7. Here, however, the Bank may be responsible under the MPC for completion of infrastructure as the successor to the landowner applicant if the Bank has assumed the proprietary interest of that landowner applicant. Stated otherwise, regardless of whether the Bank is the successor to Developers in their capacity as the "developer" applicant under the MPC, the Bank may be responsible for the completion of infrastructure as the successor to Developers in their capacity as the "landowner" applicant.

The determination of whether the Bank is the successor landowner requires a determination of what land interest the Bank received at the sheriff's sale. In *Stivala*, there was no outstanding issue of fact with regard to whether Stivala acquired the entire development, as the deed conveying the property specifically conveyed or assigned the entire first phase of the development in question there. *Stivala*, 815 A.2d at 3. Further, the deed did not contain descriptions of individual lots, but rather a metes and bounds description of the property that made up the entire development. *Id*.

Unlike the purchaser in *Stivala*, however, in the instant matter, the Bank denies that it purchased the entire Project for development at the sheriff's sale. *See* R.R. 11a (Complaint, ¶¶ 24-25: the "Bank did not purchase the property to develop or complete the development of Castle Farms"; the "Bank purchased the Castle Farms property solely for the purpose of preserving its collateral secured by its Mortgage"). The record below does not resolve the question of what proprietary

13

interest the Bank took at the sheriff's sale; there remain facts to be determined by the trial court as to exactly what the Bank accepted as collateral in the mortgage and exactly what proprietary interest in the land it received from the sheriff's sale that resulted from its mortgage foreclosure. *See Stivala*, 815 A.2d at 6-7. Accordingly, the trial court erred in granting summary judgment in favor of the Bank without resolution of this outstanding point relevant to whether the Bank was the successor to the "landowner" "applicant." If the Bank is factually determined to have assumed the proprietary interest of the prior landowner of the Project, then the Bank is the successor to the "landowner" who made application for the development and, therefore, the successor applicant under the MPC/SALDO responsible for all required infrastructure for the completion of the development.

## B. Successor Developer Status
### 1. The MPC and SALDO

We reiterate that Section 107 of the MPC defines an "applicant" as "a landowner *or developer* . . . who has filed an application for development[,] including his heirs, *successors* and assigns." 53 P.S. § 10107 (emphasis added). This means that the successor of the person or entity that made or caused to be made a subdivision or land development is also an "applicant." Accordingly, the Bank can be the "applicant" not only as the successor to a landowner as discussed in the previous section, but also as the successor to a developer.

A "developer" is "any landowner, agent of such landowner, or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or a land development." 53 P.S. § 10107; *Miravich v. Twp. of Exeter, Berks Cnty.*, 54 A.3d 106, 115 (Pa. Cmwlth. 2012). Thus, although a

14

landowner can be a developer, a developer does not also have to be a landowner. *See Morris v. S. Coventry Twp. Bd. of Supervisors*, 836 A.2d 1015, 1020-21 (Pa. Cmwlth. 2003).

The Bank insists it never made or caused to be made a subdivision or land development. The Bank asserts that it did not purchase the property with the intent or purpose of developing it, but solely to protect its investment and recoup the funds it advanced in its loan to Developers. Therefore, the Bank argues it is not Developers' successor. However, as stated above, a "successor" is anyone who assumes the interests of another or one who takes another's place. Accordingly, because an "applicant" under the MPC and SALDO also includes the successor of a developer, the trial court must decide whether the Bank assumed Developers' interest and is, therefore, their successor and, accordingly, the "applicant" responsible for the Project's infrastructure.

On the issue of whether the Bank intended to become Developers' successor under the MPC, we find *Stivala* instructive. As stated above, in *Stivala*, we concluded that because the plaintiff had "*purchased the entire property with the intent to develop it,*" the plaintiff was an "applicant" or "developer" under Section 509(a) of the MPC and therefore "would be primarily responsible for the improvements if it decided to go ahead with the [d]evelopment." 815 A.2d at 6. Not only did the purchaser buy the "development," but the developer had an intent to develop. The Bank asserts that intent is lacking here.

However, in *Stivala*, the purchaser's "intent" in this context was not its subjective desire or plan to develop the property. The court did not examine what the purchaser claimed it desired or wanted to achieve, but rather, examined the purchaser's objective deeds. The purchaser's objective "intent" was determined

15

from the purchaser's conduct in availing itself of rights associated with the approved development project; accordingly, the court rejected Stivala's argument that it was not the developer's successor-in-interest merely by reason of purchasing the property. *See* 815 A.2d at 4 & 6-7.

In *Stivala*, the purchaser pleaded in its complaint that it was the owner and *controller of the development*. 815 A.2d at 6. It was clear that Stivala had purchased the entire development and had also availed itself of the benefits of the subdivision plan and the development agreement. *Id.* at 6-7 (complaint alleged that Stivala "was the third-party beneficial purchaser of the agreements between the [t]ownship and [the original developer]"). We concluded that "[b]y doing so, [Stivala] assumed the rights *and* obligations of the original developer" and stood in the developer's shoes; Stivala could not assume the benefits of the agreements between the township and the original developer without the accompanying obligations, including completion of the infrastructure. *Id.* at 7.

Here, the trial court granted summary judgment in favor of the Bank, concluding the Bank was not Developers' successor as a matter of law. However, *Stivala* requires the examination by the trial court of outstanding issues of fact that forestall a determination that the Bank is not Developers' successor as a matter of law under the MPC. The Bank had both record notice and actual knowledge of the Developers Agreement when it purchased the property subject to the mortgage at the foreclosure sale. In fact, as noted above, the Bank specifically pleaded that it relied on the validity and enforceability of the Developers Agreement in making its decision to extend the loan to Developers. R.R. 8a. In extending the loan to Developers, the Bank admittedly relied on the subdivision approval for the Project, the Developers Agreement, and the infrastructure bond. *See* R.R. 8a, 50a & 92a.

16

Further, in valuing the land as collateral, the Bank admittedly relied on the developed value of the Project. R.R. 8a. Even before acquiring the Property at the sheriff's sale, the Bank was attempting to enforce the Developers Agreement by demanding that the Township take action against Insurer on the bond. R.R. 51a. In addition, the Bank availed itself of the advantages of the recorded subdivision approval, first by marketing the Property as a development[8] and then by selling off individual lots[9] pursuant to the subdivision plan as approved for Developers, which approval was contingent upon fulfillment of the terms of the Developers Agreement. R.R. 176a, 178a & 183a. At the same time, the Bank refused to provide the Township with a new land development plan that would eliminate Phases 2B and 2C from the approved development to release the Bank's infrastructure obligations. R.R. 56a. A finder of fact could conclude that the Bank's conduct was an attempt at

---

[8] Its marketing package described the property for sale as an "[u]pscale residential development," stating that "[t]his subdivision has been approved by [the] Township and the subdivision plans have been recorded. Lots could be sold almost immediately upon posting of security with the [T]ownship for the public improvements." R.R. 176a. The Bank's marketing release also included a copy of the recorded subdivision plat. R.R. 178a.

[9] When it was not successful in selling the Project as a whole, the Bank began selling individual lots as designated on the subdivision plan for the Project as approved by the Township; the Bank realized over $500,000 from sales of the property purchased at the foreclosure sale, including $221,000 from five individual lots in the Project. R.R. 183a. Those persons who purchased individual lots from the Bank purchased lots that would not exist without the approved subdivision plan, approval of which was contingent upon completion of the improvements required by the recorded Developers Agreement that controlled completion of the plan. *See Pocono Twp. v. Hall*, 561 A.2d 53, 56 (Pa. Cmwlth. 1989) (citing, with approval, trial court's determination that lot purchasers were entitled to rely on approved development plan requiring construction of roads in accordance with township and state regulations); *accord Starling v. Lake Meade Prop. Owners Ass'n*, 162 A.3d 327, 336 n.16 (Pa. 2017) (quoting *Kao v. Haldeman*, 728 A.2d 345, 347 (Pa. 1999) ("When . . . lots are sold according to a subdivision plan on which a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street."); *Stivala*, 815 A.2d at 6 ("Section 509 of the MPC, which requires that security be provided for the completion of the improvements, acts in large part to protect lot owners who, as part of the consideration of an approved subdivision, necessarily paid for the public improvements.") (citing *Safford*, 387 A.2d 177)).

selective enforcement of the Developers Agreement to reap all possible advantages of the subdivision approval. Thus, the Bank's conduct raises questions of material fact regarding its objective intent to act as a developer and, therefore, regarding its successor status. Like the developer in *Stivala*, the Bank could not assume the benefits of the agreements between the Township and Developers without the accompanying obligations, including completion of the infrastructure. The record before the trial court does not establish beyond dispute that the Bank did not assume Developers' interest, the rights and obligations of Developers, to become the successor to Developers and, thereby, the "applicant" within the meaning of the MPC and the SALDO.

Accordingly, we conclude the trial court erred by granting partial summary judgment on that issue.

## 2. The Developers Agreement

The Township alternatively argues that regardless of whether the Bank is responsible for the Project's infrastructure as a developer under the MPC and the SALDO, the Bank is still responsible for the infrastructure under the Developers Agreement. We note that one can become a successor to the developer by assignment of the previous developer's rights. *See, e.g.*, *Broadway Penn Mut. Off. Fee, L.P. v. Zoning Bd. of Adjustment of City of Phila.* (Pa. Cmwlth., Nos. 2804 C.D. 2010, 2805 C.D. 2010, & 2806 C.D. 2010, filed Apr. 18, 2012), slip op. at 7-8, 2012 WL 8707722 (unreported)[10] (lender bank foreclosed and purchased debtor's property at sheriff's sale, received an assignment of the debtor's rights, then

---

[10] We cite this unreported decision as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

intervened in a pending zoning matter as the debtor's successor). Here, there is nothing in the record to indicate that an express assignment was made.

The Township argues that as a recorded instrument, the Developers Agreement is a covenant running with the land. In the alternative, the Township contends the Bank is a successor to Developers' interests under the terms of the Developers Agreement. The Developers Agreement expressly provides that it is binding upon the parties and "their respective heirs, executors, administrators, *successors* and assigns." R.R. 41a (emphasis added). If the Bank is a successor under the Developers Agreement, then the Bank is also a successor to Developers under the MPC and SALDO, and, thus, an "applicant" responsible for the infrastructure of the development. *See* 53 P.S. § 10107 (defining "applicant" to include the successor of a developer).

We reject the Township's assertion that merely because it was recorded, the Developers Agreement is automatically a covenant that runs with the land. The Township cites no authority, and we have found none, for its contention that mere recording of an agreement concerning construction of improvements renders that agreement a covenant that runs with the land for the purpose of binding all individual future purchasers that are nonparties to the agreement. Here, for example, one clear purpose of the Developers Agreement was to assure that Developers, not the individual lot purchasers, would be primarily responsible to provide the requisite infrastructure for the development. The Developers Agreement therefore could not constitute a covenant running with the land, in that it could not and did not impose infrastructure obligations on the individual lot purchasers. Indeed, its purpose was exactly the opposite, to assure completion of infrastructure by the Developer.

19

Notably, however, the subject Developers Agreement stated an express intent to bind the parties' successors. R.R. 41a. Therefore, as a recorded agreement, it placed potential successors on notice that they would be subject to the obligations of the Developers Agreement. *Accord Appeal of J.C. Grille, Inc.*, 124 A.2d 659, 664 (Pa. Super. 1956)[11] (agreement that is not a covenant running with the land is binding only on one that takes the land with notice of the agreement). The Bank had both constructive notice and actual knowledge of the Developers Agreement when it purchased the property subject to the mortgage at the foreclosure sale. *See* R.R. 8a (the Bank relied on the Developers Agreement in extending financing to Developers); *see Wyeth Pharms., Inc. v. Borough of W. Chester*, 126 A.3d 1055, 1062 (Pa. Cmwlth. 2015) (purpose of recording agreement was to give constructive notice of the agreement to prospective purchasers of the affected land). Thus, the Developers Agreement could be binding on the Bank, if the Bank, objectively, is a "successor" within the meaning of the Developers Agreement.

Generally speaking, parties to a contract cannot bind third parties that did not participate in the original contract. *Mandler v. Com.*, 247 A.3d 104, 114 (Pa. Cmwlth. 2021) (citing *Chambers Dev. Co. v. Com. ex rel. Allegheny Cnty. Health Dep't*, 474 A.2d 728, 731 (Pa. Cmwlth. 1984)). Here, however, the Developers Agreement expressly provides: "This Agreement and all of its terms and conditions shall extend to and be binding upon the parties hereto and upon their respective heirs, executors, administrators, *successors* and assigns." R.R. 41a (emphasis added). Whether the Bank was a successor as intended by the parties to the Developers

---

[11] Where appropriate, we cite as persuasive Superior Court decisions in subject areas that are now within this Court's jurisdiction. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (a Superior Court decision is "particularly persuasive" where the Superior Court was exercising jurisdiction over an administrative matter, which jurisdiction now lies with this Court).

Agreement and, if so, whether that agreement could bind the Bank, are questions of fact. *Cf. Appl. of Kensington Club*, 65 A.2d 428, 429 (Pa. Super. 1949) (whether members of reorganized club were "direct or legitimate successors" of "the original incorporators," and thus entitled to seek liquor license as successors to the original licensee, presented a question of fact). The trial court did not determine what the term "successor" means in the Developers Agreement.

The definition of "successors" under the Developers Agreement is governed by contract law. A "successor" might mean a successor in title to the development, a corporate successor, a successor applicant or developer, or something else. Importantly, it may, but need not necessarily, have the same meaning as a "successor" landowner or developer under the MPC or the SALDO. The test of what "successor" means in the Developers Agreement is what was intended by the parties to *that* agreement. *Sigal v. Mfrs. Light & Heat Co.*, 299 A.2d 646, 649 (Pa. 1973) (if there is doubt as to the meaning of a contract term, it should be construed to have a reasonable meaning in accord with the intention of the parties).[12] To ascertain that intention, the court must "consider the circumstances, the situation of the parties, the objects they have in mind and the nature of the subject matter of the contract . . . ." *Id.*; *see also Zettlemoyer v. Transcon. Gas Pipeline Corp.*, 657 A.2d 920, 924 (Pa. 1995) (citing *Sigal*); *Parker v. Hough*, 215 A.2d 667, 670 (Pa. 1966) ("Where the language of a deed or a restriction is not clear, then in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the

---

[12] A written agreement is ambiguous where "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006). Whether an agreement is ambiguous is a question of law, but the meaning of an ambiguous writing is determined from the surrounding facts and circumstances, which is a determination of fact. *MCI Worldcom Commc'ns, Inc. v. Pub. Util. Comm'n*, 826 A.2d 919, 924-25 (Pa. Cmwlth. 2003).

21

conditions existing when it was made."). Further, because the meaning of the term "successor" in the Developers Agreement is not clear and is ambiguous, the Developers Agreement requires that the ambiguity be construed in favor of the Township. R.R. 41a ("Should any ambiguities be found within [the Developers] Agreement, such ambiguities shall be construed in favor of the Township."). The meaning of "successor," however, is for the trial court to ascertain. *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006) ("While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.") (citation omitted). Once the meaning of "successor" is determined, the trial court must then determine whether the Bank is Developers' successor, and thus, whether the Developers Agreement is in fact binding on the Bank. Therefore, we conclude, the issue of whether the Bank was the successor under the Developers Agreement remains an outstanding issue of fact for the trial court to determine.

### IV. Conclusion

Because the trial court granted partial summary judgment in favor of the Bank, only the Bank's summary judgment motion is at issue in this appeal. Therefore, we view the record and draw all reasonable inferences in favor of the Township as the nonmoving party. *See MFW Wine Co. v. Pa. Liquor Control Bd.*, 231 A.3d 50, 56 (Pa. Cmwlth. 2020).[13] We conclude there are outstanding issues of fact that could allow a factfinder to determine that the Bank was a successor landowner or developer and thus an "applicant" under the MPC and the SALDO or a successor developer under the Developers Agreement. Therefore, the entry of

---

[13] We cite this single-judge opinion as persuasive pursuant to Section 414(b) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(b).

summary judgment was improper. *See Bethlehem Area Sch. Dist. v. Bd. of Revenue Appeals*, 225 A.3d 212, 222 (Pa. Cmwlth. 2020) (quoting *LEM 2Q, LLC v. Guar. Nat'l Title Co*., 144 A.3d 174, 178 (Pa. Super. 2016) ("if the record contains evidence that 'would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied'")).

Based on the foregoing discussion, we vacate the order of the trial court granting partial summary judgment in favor of the Bank and remand this matter to the trial court for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Altoona First Savings Bank, a      :
Pennsylvania Chartered Mutual   :
Savings Bank                  :
                                :
          v.                 :
                                :
The Township of Logan, a political  :
subdivision of the Commonwealth   :
of Pennsylvania, Richard E. Himes :
and Mary C. Himes            :
                                :   No. 346 C.D. 2020
Appeal of:  Township of Logan    :

## O R D E R

AND NOW, this 22nd day of December, 2021, the March 9, 2020 order of the Court of Common Pleas of Blair County (trial court) is VACATED, and this matter is REMANDED to the trial court for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Altoona First Savings Bank, a     :
Pennsylvania Chartered Mutual   :
Savings Bank                        :
                                :   No. 346 C.D. 2020
           v.              :
                                :   Argued: May 12, 2021
The Township of Logan, a political  :
subdivision of the Commonwealth  :
of Pennsylvania, Richard E. Himes  :
and Mary C. Himes              :
                                :
Appeal of: Township of Logan    :

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

CONCURRING OPINION
BY JUDGE McCULLOUGH         FILED: December 22, 2021

      I agree with the result, that is, to reverse the Court of Common Pleas of Blair County's (trial court) grant of summary judgment entered in favor of Altoona First Savings Bank (Altoona First). However, I am unable join the Majority's analysis.

      First, as a general observation, it appears that the Majority makes findings – particularly on pages 16-18, which the trial court may view as binding. Respectfully, I do not believe that taking a position on outstanding issues of material fact is our role in reviewing a grant of summary judgment.

Second, unlike the Majority, I believe that the manner in which Altoona First acquired the property, *i.e.*, by operation of foreclosure, is paramount to our analysis. After all, the issue before us is whether to impute developer liability on a foreclosing lender.

Section 107 of the Pennsylvania Municipalities Planning Code (MPC)[1] defines an "applicant" as "a landowner or developer . . . who has filed an application for development[,] including his heirs, successors and assigns." I submit that the phrase "his heirs, successors and assigns" in this context must mean some sort of voluntary, waivable, or intentional acceptance of the developer's obligations, not one that occurs adversely by operation of law – such as what occurs in foreclosure. Absent some indicia of intent by Altoona First to voluntarily assume these obligations, we cannot impose a duty upon a mortgagee greater than the one established as a money lender and security holder – even under the MPC.

The Majority recognizes that parties strenuously dispute whether Altoona First intended to assume Richard E. and Mary C. Himes's (Developers) interest in the development. However, the Majority rejects the argument, holding instead that to be the successor landowner, one only needs to "assume the proprietary interest of the landowner applicant it has succeeded." (*Altoona First Savings Bank v. The Township of Logan*, __ A.3d __, __ (Pa. Cmwlth., No. 346 C.D. 2020, filed December 22, 2021), slip op. at 10, 13.) According to the Majority, this entails examination of "what [Altoona First] accepted as collateral in the mortgage and exactly what proprietary interest in the land it received from the sheriff's sale that resulted from its mortgage foreclosure." __ A.3d __, slip op. at 14. It is not entirely clear from the Majority's opinion, however, how one would demonstrate from these

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107.

instruments that Altoona First has "assumed the Developers' proprietary interest." The Majority does not explain what language in the mortgage instrument or sheriff's deed would be necessary to create an assumption of a developer's proprietary interests in a development. However, relying on *Stivala Investments, Inc. v. South Abington Twp.*, 815 A.2d 1, 5 (Pa. Cmwlth. 2002), the Majority seems to suggest that the answer lies in the mortgage instrument and sheriff's deed, and that if the property description in these instruments makes reference to the development, as opposed to raw land, that would be sufficient to conclude that the developer's proprietary interest and obligations under a separate developer's agreement is somehow transferred to the Bank. *See* Maj. Slip op. at 13 ("In *Stivala*, there was no outstanding issue of fact with regard to whether Stivala acquired the entire development, as the deed conveying the property specifically conveyed or assigned the entire first phase of the development in question there. *Stivala*, 815 A.2d at 3. Further, the deed did not contain descriptions of individual lots, but rather a metes and bounds description of the property that made up the entire development. *Id.*").

Here, both the mortgage instrument and the sheriff's deed are part of the record. Both describe the "piece or parcel of land" at issue by referencing the Castle Farms Development. (Reproduced Record (R.R.) at 100a-01a, 168a, 170a.) I submit that descriptive language alone is not sufficient to transform Altoona First into a successor landowner for purposes of section 107 of the MPC. Rather, I believe it is Altoona First's intention or willingness to assume the responsibility for all required infrastructure for the completion of the development that governs whether it is a "successor landowner" under section 107 of the MPC. Stated differently, to resolve whether Altoona First has stepped into the shoes of Developers for purposes of section 107 of the MPC, the salient question is whether Altoona First manifested,

PAM - 3

either before or after foreclosure, its intent to take over as developer in the event of Developers' default. This requires an examination of all lending documents and collateral agreements, if any, to determine if Altoona First was in privity with Developers (such as a joint venture) and whether the lending documents created a duty on the part of Altoona Bank to succeed to Developers' obligations. The examination should not be relegated to the descriptive language in the mortgage instrument and deed. Rather, the inquiry should take into account the totality of the circumstances, both before the foreclosure and afterwards. There has to be some indicia of intent to develop.

A foreclosing bank can also become a developer for purposes of section 107 of the MPC *after* it acquires a property by foreclosure when its activities extend beyond mere lending. Other jurisdictions have employed a test which focuses on the level of the foreclosing mortgagee's participation in development activities to determine liability.

In *McKnight v. Board of Directors*, 512 N.E.2d 316, 316-17 (Ohio 1987), the Ohio Supreme Court held that by acquiring title to property either through foreclosure or by accepting a deed in lieu of foreclosure, a mortgagee does not necessarily assume the role of the "developer," as defined by Ohio Revised Code §5311.01(T), Ohio Revised Code Ann. §5311.01(T) (governing Condominium Property). Focusing on the mortgagee's conduct, the court held that when a mortgagee performs such acts as to become so intertwined with the promotion and development of the property that it, in essence, has engaged in the business of a developer, it cannot insulate itself from the duties, constraints and obligations of a developer pursuant to Ohio Revised Code Chapter 5311. *Id*.

In *Terrace Condominium Association v. Midlantic National Bank*, 633 A.2d 1060 (N.J. Super. 1993), the New Jersey Superior Court held that a lender assumed a developer's obligations where the lender completed construction, and acted as developer, sponsor, and marketer of the project. *Id.* at 1064. The court reasoned that "since [lender] took over construction, it must be held to have assumed all of the obligations and responsibilities of the initial builder and developer." *Id.* at 1065.

In *Moloney v. Brothers Five Cent Savings Bank FSB*, (Mass. Super., No. 952584, filed January 7, 1998), 1998 WL 34060939, at *2), the lender undertook actions which indicated that it had taken over the project after it foreclosed on the developer. When the lender accepted the deed in lieu of foreclosure from the developer, approximately half of the complex units had been sold. The lender proceeded to finish construction on the complex, assumed control of the condominium trust, and marketed and sold the unsold units. Completion of construction consisted of completing roof repairs, repairing the weir, addressing issues of water filtration, addressing structural matters, and negotiating the roof, elevator, HVAC, pool, and fire alarm warranties. There, the court found that these actions clearly manifested the lender's intent to complete the project and not merely recover its already expended capital.

I believe we can and should look at the manifestations of intent expressed by the foreclosing mortgagee both before and after foreclosure to determine if it has succeeded the mortgagor as developer–which would subject it to section 107 the MPC. I do not believe there is enough undisputed evidence in the record to come to the conclusion that Altoona First either acquired the property so it could continue developing it, or that it has engaged in the business of a developer by

marketing the entirety of the property or attempting to sell individual lots. By all accounts, Altoona First is currently attempting to sell the property. At the very least, there is an issue of fact as to whether Altoona First is engaged in the business of a developer or simply looking for someone to take over as a developer–which should preclude summary judgment. Because the record is still unclear on that issue, I would reverse the trial court's grant of summary judgment and remand for further proceedings.

With respect to whether Altoona First is a successor under the Developer's Agreement – I would conclude as a matter of law that it is not a successor developer under that agreement. Altoona First was not a signatory to the Developer's Agreement. It cannot be unwillingly bound by it because it was not a party thereto and did not agree to be bound by its obligations.

For these reasons, I concur only in the result reached by the Majority.

_____
PATRICIA A. McCULLOUGH, Judge